IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| PETER F. WINGARD, | |
| Plaintiff, | ORDER |
| v. | 14-cv-185-jdp |
| METRO KIA OF MADISON, | |
| Defendant. | |

---

| | |
|---|---|
| PETER F. WINGARD, | |
| Plaintiff, | ORDER |
| v. | 14-cv-401-jdp |
| BALLWEG CHEVROLET, | |
| Defendant. | |

---

| | |
|---|---|
| PETER F. WINGARD, | |
| Plaintiff, | ORDER |
| v. | 14-cv-402-jdp |
| METRO FORD OF MADISON, | |
| Defendant. | |

---

| | |
|---|---|
| PETER F. WINGARD, | |
| Plaintiff, | ORDER |
| v. | 14-cv-403-jdp |
| SMART MOTORS TOYOTA, | |
| Defendant. | |

---

1

PETER F. WINGARD,

                Plaintiff,

   v.

ZIMBRICK HONDA,

                Defendant.

ORDER

14-cv-404-jdp

---

Peter Wingard is the plaintiff in these five patent cases assigned to me. In each case, Wingard asserts U.S. Patent No. 5,530,431, claiming an anti-theft device for protecting electronic equipment, against a local auto dealer. Each of the defendants has challenged Wingard's standing to sue on the grounds that he is not the owner of the '431 patent because he lost the patent in his 2010 personal Chapter 7 bankruptcy.

The essential legal principles are not in dispute. This court does not have jurisdiction to hear these cases if Wingard lacks standing to bring the suits. Wingard has standing only if he was the owner of the '431 patent when he filed these suits, and it is his burden to show that this is so. All of Wingard's personal property became property of the bankruptcy estate when he filed a petition for Chapter 7 personal bankruptcy in 2010, regardless of whether that property was listed on the schedule of his assets. But any unscheduled property, such as the '431 patent, could not have been abandoned back to Wingard at the close of the bankruptcy. If Wingard himself owned the '431 patent at the time he filed his bankruptcy petition, the patent is still the property of the bankruptcy estate, even though the bankruptcy is closed. Under these circumstances, it is only the bankruptcy trustee, not Wingard, with standing to sue to enforce the '431 patent.

But Wingard contends that he did not personally own the '431 patent when he filed for bankruptcy, The Wingard Company did. Thus, Wingard must show that The Wingard Company owned the patent when he filed for bankruptcy, but that he personally owned the patent when he filed these suits. To make this showing, Wingard has adduced evidence of a series of assignments that moved the patent back and forth between Wingard and his company. Because Wingard controlled his company, he could move the patent back and forth at his whim, but he had to do so in writing.

One assignment is critical: Wingard alleges that on November 5, 2007, he executed a written assignment of the '431 patent to The Wingard Company. But that document has been lost. As evidence of the assignment, Wingard submits his own declaration (*see, e.g.,* Case No. 14-cv-404, Dkt. 34) and a "confirmatory assignment," which Wingard executed on September 25, 2014 (Case No. 14-cv-404, Dkt. 32-11). The confirmatory assignment purports to document the November 5, 2007, assignment.

Under some circumstances, an after-the-fact confirmatory assignment is adequate evidence of an earlier written assignment. *See, e.g., Am. Optical Co. v. Shuron Optical Co.*, 9 F.2d 932, 936 (W.D.N.Y. 1925) (opposing party did not object to the confirmatory assignment). But defendants are understandably skeptical of Wingard's confirmatory assignment for multiple reasons, particularly because it was executed six days after defendant Zimbrick Honda filed a motion to dismiss its case for lack of standing. Whether Wingard executed a written assignment of the '431 patent to The Wingard Company on November 5, 2007, is a question of fact. And even if the confirmatory assignment were presumed valid, *c.f. Imax Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1026, 1029 (C.D. Cal. 2005), defendants have adduced

3

sufficient evidence to rebut that presumption. The standing issue thus turns on a disputed fact. When the factual basis of standing is challenged, as it is here, the plaintiff must prove his standing by a preponderance of the evidence. *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

During the status conference on January 16, 2015, both sides took the position that the standing issue was ripe for a decision on the documentary record already before the court. Not every factual dispute concerning standing requires an evidentiary hearing, because often the facts concern solely documentary evidence. *Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986). But that is not the case here: the decisive issue turns on the credibility of Wingard's testimony that he executed a written assignment to The Wingard Company on November 5, 2007. The determination of Wingard's credibility requires an evidentiary hearing. *See, e.g., Bushberger v. Protecto Wrap Co.*, No. 07-cv-8, 2008 WL 725189, at *4 (E.D. Wis. Mar. 17, 2008) (citing *Bischoff v. Osceola County*, 222 F.3d 874, 879 (11th Cir. 2000) (requiring an evidentiary hearing for standing issues that turn on credibility). Although the court has not found a Seventh Circuit opinion requiring an evidentiary hearing in this precise circumstance, there is ample Seventh Circuit authority instructing district courts to resolve factual disputes going to jurisdiction through an appropriate fact-finding process. *Crawford*, 796 F.2d at 929. Even if an evidentiary hearing were not strictly required, I would conclude that a live evidentiary hearing is the appropriate process to resolve the disputed facts concerning Wingard's standing to sue.

Accordingly, I will set an evidentiary hearing on defendants' motions to dismiss for lack of standing for Friday, February 20, at 1 p.m. I expect that the hearing will take no more

than 90 minutes, although I will keep the calendar clear until 4 p.m. in case it is needed. I expect that the main event will be Wingard's testimony and cross-examination, but I will take whatever evidence the parties care to present. I will also hear brief closing arguments.

I will require defendants to appoint lead counsel to present their case. Defendants may have one attorney handle the Wingard examination and another make a closing argument, but I will not allow each defendant to conduct its own cross-examination and I will not hear multiple closing arguments. I will not require in-person appearances for non-lead counsel.

Entered February 5, 2015.

BY THE COURT:

/s/
JAMES D. PETERSON
District Judge